NOT DESIGNATED FOR PUBLICATION

No. 128,557

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ANTHONY WASHINGTON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Seward District Court; CLINT PETERSON, judge. Submitted without oral argument. Opinion filed July 17, 2026. Affirmed.

*Emily Brandt*, of Kansas Appellate Defender Office, for appellant.

*Russell Hasenbank*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before CLINE, P.J., BOLTON FLEMING, J., and JEFFREY GETTLER, District Judge, assigned.

PER CURIAM: Anthony Washington appeals the revocation of his probation.

FACTS

On January 25, 2024, Washington pled no contest to one count of unlawful possession of a controlled substance, a level 5 drug felony. Because this was a third or subsequent conviction, special rule 26 applied and Washington faced a presumptive prison sentence. On April 25, 2024, the district court granted a downward dispositional

departure and placed Washington on probation for 12 months, with an underlying prison sentence of 22 months.

On July 29, 2024, the State moved to revoke Washington's probation, alleging he failed to comply with its terms. Washington denied the allegations, and the district court held an evidentiary hearing on October 31, 2024. The State's case rested on an affidavit prepared by intensive supervision officer (ISO) Astacia Thomson. Although Thomson was subpoenaed, she did not appear. The State instead called Kayla Janko, Director of Cimarron Basin Community Corrections, who testified that Thomson was no longer employed with the agency and that Janko, as the current "keeper of the file," maintained the records in the ordinary course of business. Janko then read Thomson's affidavit into the record, identifying violations that included failing to report contact with law enforcement, failing to timely report to the ISO, failing to attend employment skills classes, failing to verify employment, failing to pay court costs, failing to provide contact information, and failing to pay for or complete a drug and alcohol assessment. The State called no other witnesses, and the affidavit itself was never admitted into evidence.

On cross-examination, Janko acknowledged that Washington had passed all urinalysis tests, attended meetings (albeit late), was employed, and provided pay stubs to the ISO. Washington had also paid some of his fees.

Washington also testified. He explained that he had not reported his contacts with law enforcement because he was not in trouble in either instance. He was homeless, sleeping on couches, in the park, or at a motel. He was working two jobs and had provided pay stubs to Thomson, who he believed to be satisfied with that documentation. He had not paid for the drug and alcohol evaluation because Thomson told him she was going to revoke his probation. Washington added that he knew the evaluation was important and had remained sober.

2

The district court found Washington violated his probation. Because Washington was on probation as a result of a departure sentence, the district court revoked Washington's probation and imposed his underlying prison sentence without modification.

Washington timely appealed.

LEGAL ANALYSIS

*Did the district court err in revoking Washington's probation when Washington was not allowed to confront and cross-examine the State's only witness?*

*Preservation*

Washington concedes that his counsel did not object when Janko read Thomson's affidavit into the record, but he asks this panel to review the issue under an exception to the preservation rule on constitutional grounds. The State "believes K.S.A. 60-404 is applicable in this case but also acknowledges the issue in this case implicates the defendant's due process rights."

Appellate courts generally do not address issues raised for the first time on appeal unless an exception applies. One exception is when "'consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights.'" *State v. Allen*, 314 Kan. 280, 283, 497 P.3d 566 (2021). Given the importance of Washington's right to confrontation and the fact that the affidavit was the State's only evidence, it would fit within this exception. The issue is properly preserved.

*Standard of Review*

"When determining whether a district court complied with due process requirements in revoking a defendant's probation, we apply an unlimited standard of review." *State v. Lyon*, 58 Kan. App. 2d 474, 478, 471 P.3d 716 (2020).

*Legal Analysis*

A probation revocation has two steps. The district court must first find by a preponderance of the evidence that the probationer violated a condition of probation. Second, it exercises discretion in deciding whether the violation warrants revocation or in selecting another sanction under K.S.A. 22-3716. *Lyon*, 58 Kan. App. 2d at 478.

Probation is an "act of grace." *State v. Hurley*, 303 Kan. 575, 581, 363 P.3d 1095 (2016). Once granted, however, the probationer "acquires a conditional liberty interest which is subject to substantive and procedural due process limits on its revocation," and probation cannot be revoked "'unless it is made to appear that the probationer has failed to comply with the conditions of probation.'" 303 Kan. at 581. Revocation proceedings must therefore "comport with minimum due process. A probationer facing revocation must be afforded an opportunity to confront and cross-examine adverse witnesses unless the judge specifically finds good cause for not allowing confrontation." *State v. Marquis*, 292 Kan. 925, Syl. ¶ 3, 257 P.3d 775 (2011). The Legislature codified these protections in K.S.A. 22-3716(b)(2):

> "Unless the defendant, after being apprised of the right to a hearing by the supervising court services or community correctional services officer, waives such hearing, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged. The hearing shall be in open court and the state shall have the burden of establishing the violation. The defendant shall have the right to be represented by counsel and shall be informed by the judge that, if the

4

defendant is financially unable to obtain counsel, an attorney will be appointed to represent the defendant. The defendant shall have the right to present the testimony of witnesses and other evidence on the defendant's behalf. Relevant written statements made under oath may be admitted and considered by the court along with other evidence presented at the hearing."

These statutory safeguards satisfy due process. *Hurley*, 303 Kan. at 582. When they are not observed, the resulting error is constitutional, and the State must "persuade the reviewing court, beyond a reasonable doubt, that there is no reasonable possibility that the error affected the outcome." 303 Kan. 575, Syl. ¶ 4.

Washington's appeal turns on the confrontation component of this framework. He argues that the district court allowed Janko, a records custodian, to read ISO Thomson's affidavit into the record without first weighing "(1) the explanation the government offers of why confrontation is undesirable or impractical, and (2) the reliability of the evidence which the government offers in place of live testimony." *State v. Yura*, 250 Kan. 198, 208, 825 P.2d 523 (1992). The State concedes the district court did not conduct the *Yura* analysis but contends any error was harmless.

Two obstacles stand in the way of Washington's argument. The first is the absence of an objection. In *State v. Graham*, 272 Kan. 2, 30 P.3d 310 (2001), *superseded by statute on other grounds as stated in State v. Clapp*, 308 Kan. 976, 425 P.3d 605 (2018), the Kansas Supreme Court held that hearsay can support a probation revocation when it bears indicia of reliability and that "[w]hen hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial." 272 Kan. at 6. The court explained that the good-cause analysis is triggered by a confrontation objection: Had counsel objected in *Graham*, "the trial court would have been required to make specific findings regarding good cause for not allowing confrontation, and this court would have a basis for reviewing the district court's reasons. Because no objection was made to consideration of the LabCorp test results, we find no error." 272 Kan. at 6. The same is

true here. Washington's counsel did not object when Janko read Thomson's affidavit into the record, so the district court was not obligated to conduct the *Yura* good-cause analysis.

The second obstacle is harmlessness. *State v. Carter*, 5 Kan. App. 2d 201, 614 P.2d 1007 (1980), is on point. Carter, like Washington, faced a case built on hearsay. Unlike Washington, Carter objected and moved for dismissal at the close of the State's evidence. After his motion was denied, he and two family members testified. 5 Kan. App. 2d at 203-04. On appeal he argued he had been "forced to come forward with evidence in an attempt to mitigate his failure to comply with the terms of his probation." 5 Kan. App. 2d at 207. A panel of this court rejected that argument:

> "The equitable argument made by the defendant that he should not be penalized for actions he was forced or induced to take as a result of the alleged erroneous rulings of the trial court seems to be answered by *State v. Blue*, 225 Kan. 576, 592 P.2d 897 (1979), which held that a defendant who presents evidence after a trial court has overruled a motion for acquittal at the close of the prosecution's case waives error in the denial of that motion. *State v. Blue* further provides that when considering a motion for acquittal made at the close of all the evidence, the trial court must consider all the evidence when ruling on that motion. Although distinguishable from this case because it involved a full scale criminal prosecution rather than a probation revocation hearing, we conclude that the principles of *State v. Blue* are applicable in this action. Accordingly, we hold that the defendant waived his right to assert reversible error on the ground that the State failed to establish a probation violation because it relied solely on inadmissible hearsay evidence, because he introduced testimony that clearly proved such a violation by a preponderance of the evidence." *Carter*, 5 Kan. App. 2d at 207-08.

Washington's position is weaker than Carter's. Washington never objected, yet he took the stand and supplied testimony that confirmed the violations. He testified that he had not reported his contacts with law enforcement, that he was homeless and not in

6

stable contact with his ISO, and that he had not paid for or completed the required drug and alcohol evaluation.

The district court's ruling confirms that Washington's own testimony, not Thomson's affidavit, drove the result, stating:

> "[T]he Defendant's indifference to be responsible for keeping track with the requirements of his probation and the fact that he just testified that he thought he was taking this seriously, that the Defendant was in violation and he has no hope of being able to succeed and move forward if . . . he thought he was taking his situation seriously. And I'm also taking note that the Defendant was only making offers to pay the required fees, if and only if it would help him delay any probation revocation proceedings. When he learned that it wouldn't help him, he didn't pay. So the Defendant's probation is revoked."

The court tied the violation findings to Washington's own admissions rather than the affidavit, pointing specifically to his selective approach to paying fees. Because counsel lodged no objection that would have triggered a good-cause inquiry under *Graham* and *Yura*, and because Washington's own testimony "clearly proved such a violation by a preponderance of the evidence," *Carter*, 5 Kan. App. 2d at 208, any error in admitting Janko's recitation of Thomson's affidavit was harmless. The district court did not err in revoking Washington's probation.

Affirmed.